*1017 OPINION.
Oppek :
This proceeding presents the single question of the deduc-tibility of certain payments made in the year 1935 to the Reconstruction Finance Corporation. Briefly stated, the facts giving rise to the controversy are that the petitioner in a prior year and at the request of R. F. C. had paid off a loan owing to the latter from the proceeds of a transaction whereby a note of petitioner’s wholly owned subsidiary, the Del Mar.Co., and preferred stock of petitioner issued for the purpose, were used to obtain funds from the R. F. C. These funds in turn were repaid to the latter in discharge of the previous obligation. On its face the transaction took the form of an interest-bearing note secured by the preferred stock as collateral. The payments in question were those made to the R. F. C. by Del Mar as “interest”, the amounts having been received by the latter from its parent for that purpose but in the form of “dividends” on the preferred stock.
Petitioner contends that we may in this situation disregard the corporate existence of Del Mar and treat all of its actions and transactions as though they were in fact those of petitioner. It suggests that this is one of the exceptional cases to which the courts refer when they look through the corporate fiction. The practice, however, of disregarding corporations which the corporate parties themselves have meticulously preserved is one capable of serious abuse. This is particularly true when we are asked to do so for the benefit of the very interests which have themselves chosen to take advantage of the corporate relationship. Cf. Mississippi River & Bonne Terre Railway, 39 B. T. A. 995. The present circumstances suggest an illustration of the inconsistency which we are asked to approve. Del Mar was organized, according to the testimony, for the purpose of holding stock which, under the law of some jurisdictions, may not be owned by insurance companies. If Del Mar is to be regarded as nonexistent, the very purpose of its formation will be destroyed, because then the ownership of Del Mar will have to be treated as in reality that of its parent, the insurance company. Cf. Munson S. S. Line v. Commissioner, 77 Fed. (2d) 849, reversing 30 B. T. A. 946. And if that is so, petitioner was in legal contemplation the true owner of the stock in violation of the prohibition of the jurisdictions in question. We are unwilling to accept that formula for dealing with these facts.
Nevertheless the transaction which gave rise to the present controversy may profitably be analyzed to determine whether, even if we *1018 accept the separate existence of Del Mar, the terms of the statutes permitting deductions have been rendered inapplicable.[1] As the arrangement was actually carried out only petitioner and R. F. G. were the real participants. Only they obtained any benefit whatever. When the stock was delivered it was issued directly to R. F. C. and in its name. The proceeds were paid to petitioner, which instructed the Federal Reserve Bank of Richmond to apply it on its loan from R. F. C. Upon redemption the stock was received back from the R. F. C. without endorsement, and canceled; and the redemption payment was directed by petitioner’s board of directors to be made directly to R. F. C. By the original transaction petitioner accomplished the discharge of its four million dollar liability in exchange for the issuance of a comparable amount of its own preferred stock. R. F. 0. obtained every right which could possibly inhere in that stock to the exclusion in every conceivable- respect of Del Mar. Even the dividends which were payable by the terms of the issue were relinquished by Del Mar, except to the extent that they had to be transferred through it to discharge the interest obligation to R. F. C. Passing the question of whether under those circumstances Del Mar’s note was given for any valid consideration, and assuming that it was infra vires, it seems clear that at most Del Mar’s position was that of an accommodation maker. Norfolk National Bank of Commerce & Trusts v. Commissioner, 66 Fed. (2d) 48, 51 (C. C. A., 4th Cir.). It did not and could not conceivably obtain any benefit from the transaction. It did not receive the funds borrowed nor the stock issued, nor the notes canceled. It was not possible that it ever would receive any benefit. Cf. Abrams Sons’ Realty Corporation, 40 B. T. A. 653. If that is so the obligation, whatever it is determined to be, was the equitable lia *1019 bility of the accommodated party, in this case the petitioner. Building & Engineering Co. v. Northern Bank of New York, 206 N. Y. 400; 99 N. E. 1044; In re Wingert, 89 Fed. (2d) 305 (C. C. A., 4th Cir.); certiorari denied, 302 U. S. 697; see Shannon v. Sutherland, 74 Fed. (2d) 530 (C. C. A., 4th Cir.); Elswick v. Combs (Va.), 198 S. E. 501; Browning v. Fuller (Va.), 149 S. E. 462, 463. The same tiling would be true if Del Mar had been an individual, for example, a stockholder, whose name had been signed to an accommodation note because of the lender’s insistence. We need not resort to a disregard of Del Mar’s corporate existence for that conclusion.
If we are correct in this, the payments made to the E. F. C., originating as they all did with the petitioner, and terminating as they all did with E. F. C., were payments on account of petitioner’s obligation to the latter. The tax consequence is identical, whether we say that they are payments of dividends on the preferred stock which E. F. C. held, or interest on an obligation which was actually that of the petitioner. That being so, we need not determine which legal phrase more nearly describes them. It is sufficient to hold, as we do, that either as interest paid or as dividends on a domestic insurance company’s preferred stock held by an instrumentality of the United States they were deductible under section 23 (b) of the Eev-enue Act of 1934, or section 121 of that Act, as added by the Act of August 27, 1935.1[2]

Decision will be entered u/nder Bule 50.

 See footnote 1, supra.